**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : CRIMINAL NO. 1:03-CR-250 |
| | : |
| v. | : (Chief Judge Conner) |
| | : |
| **MICHAEL D. FORBES (1),** | : |
| | : |
| **Defendant** | : |

**MEMORANDUM**

Defendant Michael D. Forbes moves the court for a sentence reduction under Section 404(b) of the First Step Act of 2018, § 404(b), Pub. L. No. 115-391, 132 Stat. 5194, 5222.  In an order dated October 4, 2019, we found that Forbes is eligible for relief under the First Step Act but deferred ruling on his motion pending receipt of an addendum to the presentence report and submissions from the parties.  Having reviewed the record, the addendum, and the parties' submissions, we decline to exercise our discretion to reduce Forbes' sentence.

**I.**     **Factual Background and Procedural History**

On September 17, 2003, a grand jury returned a 22-count indictment charging Forbes and 20 others with trafficking and conspiring to traffic heroin, crack cocaine, and powder cocaine in the Middle District of Pennsylvania.  (Doc. 1).  The grand jury returned a superseding indictment on October 1, 2003, adding five counts and as many defendants.  (Doc. 129).  The government struck plea deals with nearly all of Forbes' codefendants, and on March 17, 2004, the grand jury returned a second superseding indictment naming Forbes and only one other codefendant.

(Doc. 505). That codefendant also pled guilty, and the case proceeded to trial on the second superseding indictment against Forbes alone.

The second superseding indictment charged Forbes with manufacturing, distributing, and possessing with intent to manufacture and distribute 100 grams or more of heroin and 50 grams or more of crack cocaine and powder cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count I); interstate travel to facilitate drug trafficking in violation of 18 U.S.C. § 1952(a)(3) (Count III); use of a communication facility in connection with a drug-trafficking offense in violation of 21 U.S.C. § 843(b) (Count IV); using, carrying, and discharging a firearm during a drug-trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(iii) (Count VI); and conspiracy to manufacture, distribute, and possess with intent to manufacture and distribute 100 grams or more of heroin and 50 grams or more of crack cocaine and powder cocaine in violation of 21 U.S.C. § 846 (Count VII). (Doc. 505).

On July 15, 2004, following a four-day trial, the jury returned a guilty verdict on Counts I, IV, VI, and VII, and a not-guilty verdict on Count III. (Doc. 716). The jury made the following additional findings: (1) as to Count I, Forbes was responsible for more than 500 grams but less than 1.5 kilograms of crack cocaine, and more than 5 grams but less than 10 grams of heroin; (2) as to Count VI, the subject firearm was both brandished and discharged during the course of Forbes' drug-trafficking activities; (3) as to Count VII, that the conspiracy involved more than 500 grams but less than 1.5 kilograms of crack cocaine but did not involve heroin; and (4) that Forbes was an organizer or leader of criminal activity that involved five or more participants. (Id.)

The presentence report grouped Counts I, IV, and VII and calculated an adjusted offense level of 42, which represented a base offense level of 36; a four-level increase for a leadership role in the offense; and a two-level increase for obstruction of justice. (PSR ¶¶ 13, 16, 17, 21). The Guidelines sentence for Count VI was the statutory minimum. (Id. ¶ 22). At sentencing, the court adopted the base offense level and leadership enhancement recommended by the presentence report, finding that each was fully supported by the jury's verdict. (10/29/04 Sentencing Tr. 15:10-16:16). The court did not resolve Forbes' objection to the obstruction-of justice enhancement since its application had no impact on the Guidelines range. (Id. at 16:17-17:2). An uncontested criminal history category of VI and an offense level of either 40 or 42 produced a Guidelines imprisonment range of 360 months to life on Counts I, IV, and VII, to be followed by a 120-month consecutive mandatory minimum term on Count VI. (See id.) The court imposed an aggregate sentence of 600 months' imprisonment, consisting of 480 months on Counts I and VII and 48 months on Count IV, to run concurrently, and a statutorily mandated consecutive term of 120 months on Count VI. (See Doc. 936).

Forbes appealed to the Third Circuit Court of Appeals, which affirmed his conviction but remanded for resentencing in light of the United States Supreme Court's intervening decision in United States v. Booker, 543 U.S. 220 (2005). See United States v. Forbes, 164 F. App'x 251 (3d Cir. 2006) (nonprecedential). During the Booker resentencing on April 19, 2006, the court addressed the salient § 3553(a) factors and resentenced Forbes to a term of imprisonment identical to the original judgment of sentence. (Doc. 1095). The court underscored in particular Forbes'

3

leadership role in the instant offense, including his brutal and oft-ruthless control tactics; his total lack of responsibility or remorse; his violent criminal record; and his "utter disdain for the laws of a civilized society." (4/19/06 Resentencing Tr. 17:13-19:7). The Third Circuit affirmed Forbes' post-Booker sentence, see United States v. Forbes, 258 F. App'x 417 (3d Cir. 2007) (nonprecedential), and the Supreme Court denied *certiorari*, see Forbes v. United States, 552 U.S. 1267 (2008) (mem.).

On February 3, 2016, Forbes moved for a reduced sentence pursuant to 18 U.S.C. § 3582(c) and Amendment 782 to the United States Sentencing Guidelines. We denied that motion in an opinion dated March 28, 2016. See United States v. Forbes, No. 1:03-CR-250, 2016 WL 1182249 (M.D. Pa. Mar. 28, 2016); (Docs. 1301, 1302). We determined that, while Forbes was eligible for a reduced sentence, a reduction was not warranted based on the Section 3553(a) factors, Forbes' post-sentencing conduct, and the ongoing threat he presented to public safety. See Forbes, 2016 WL 1182249, at *3-4. Forbes appealed, (see Doc. 1304), the Third Circuit affirmed, see United States v. Forbes, 664 F. App'x 184 (3d Cir. 2016) (nonprecedential), and the Supreme Court denied *certiorari*, see Forbes v. United States, 137 S. Ct. 1354 (2017) (mem.).

Forbes now moves the court for a sentence reduction pursuant to Section 404(b) of the First Step Act. On October 4, 2019, we issued an order concluding that Forbes is eligible for relief under the First Step Act. (Doc. 1318). We deferred ruling on Forbes' motion pending preparation of an addendum to the presentence report and receipt of presentencing submissions. (Id.) The United States Probation Office has prepared an addendum to the presentence report, and both Forbes and

4

the government have submitted briefs articulating their positions.[1]  Forbes has also submitted a personal letter to the court, as well as character letters from his mother, sister, and a friend.  We have carefully reviewed these exhibits, the parties' briefs, and the entire record.  Forbes' motion is now ripe for disposition.

## II.   Discussion

The First Step Act authorizes federal district courts to impose a reduced sentence for covered crack cocaine offenses where the statutory penalties of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, §§ 2-3, 124 Stat. 2372, 2372, would have applied had that Act been in effect when the covered offense was committed.  See First Step Act § 404(b).  The First Step Act defines a "covered offense" in relevant part as "violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 . . . of the Fair Sentencing Act . . . that was committed before August 3, 2010."  Id. § 404(a).  Section 2 of the Fair Sentencing Act, in turn, increased the quantity of crack cocaine required to trigger mandatory minimum penalties under 21 U.S.C. § 841(b)(1)(A)(iii) from 50 to 280 grams and

---

[1] While the government obviously opposes any reduction of Forbes' 600-month sentence, (see Docs. 1314, 1324), its sentencing memorandum closes with the curious statement that a "combined total sentence of 525 months," representing "a reduction . . . of 6 years, 4 months," would be "sufficient" to achieve the goals of sentencing. (See Doc. 1324 at 7).  This appears to be an inartful attempt to state an argument in the alternative.  What the government means to say, we think, is that if we are inclined to reconsider Forbes' sentence at all, a sentence at the very top of the new Guidelines range would be appropriate.  Regardless of the government's stated position or alternative recommendation, sentence reduction under the First Step Act remains a matter of judicial discretion.  See First Step Act § 404(c).

5

under 21 U.S.C. § 841(b)(1)(B)(iii) from 5 to 28 grams.  See Fair Sentencing Act § 2(a).

We have already found that Forbes is eligible for relief under the First Step Act.  (Doc. 1318 at 2 & n.1).  The relevant offenses charged at Counts I and VII—distribution of and possession with intent to distribute 50 grams or more of crack cocaine, and conspiracy to commit same, respectively—had their statutory range of imprisonment reduced by the Fair Sentencing Act from a minimum of 10 years and maximum of life to a minimum of 5 years and a maximum of 40 years. (See id. at 2).  Forbes' statutory exposure on the remaining counts is unchanged: Count IV carries no minimum and a maximum of four years, and Count VI carries a 10-year minimum and a maximum of life.  (See Doc. 1319 at 1, 3).  The addendum to the presentence report calculates a reduced Guidelines imprisonment range for Counts I, IV, and VII of either 324 to 405 months (with an obstruction-of-justice

enhancement) or 262 to 327 months (without the enhancement), to be followed by the consecutive 10-year term on Count VI.[2]  (See id. at 3).

Whether a reduced sentence is warranted is a separate question.  Relief under Section 404(b) is not automatic.  See First Step Act § 404(c).  On this point, the First Step Act is clear: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."  Id.  Once eligibility is determined, the decision to grant or deny a reduction is within the district court's discretion.  Id.; see also United States v. Crews, 385 F. Supp. 3d 439, 443-44 (W.D. Pa. 2019) (collecting cases).  In considering whether to exercise this discretion, courts within this judicial district have looked to the Section 3553(a) sentencing

---

[2] Because we decline *infra* to exercise our discretion to reduce Forbes' sentence under the First Step Act, we do not resolve the parties' outstanding disputes as to whether intervening Supreme Court decisions impact Forbes' statutory resentencing exposure or whether a plenary Guidelines recalculation accounting for other jurisprudential developments is appropriate.  However, we are inclined to agree with the government that, because the second superseding indictment charged an enhancement-triggering drug weight (50 grams) and the jury found Forbes responsible for more than that weight (500 grams) unanimously and beyond a reasonable doubt, Forbes' statutory sentencing exposure is properly determined by the 50-gram drug weight.  The same would ostensibly be true of the statutory enhancement of Count VI—because the second superseding indictment charged Forbes with using and discharging a firearm during a drug-trafficking crime, and the jury found unanimously and beyond a reasonable doubt that a firearm was used and discharged, the statutory sentencing exposure on Count VI would remain 10 years to life imprisonment.

factors,[3] see 18 U.S.C. § 3553(a), as well as relevant postsentencing conduct. See, e.g., United States v. Surine, No. 4:07-CR-304, ___ F. Supp. 3d ___, 2019 WL 6699914, at *2-4 (M.D. Pa. Dec. 9, 2019); United States v. Cruz, No. 1:95-CR-204, 2019 WL 3070562, at *7-8 (M.D. Pa. July 12, 2019); see also Pepper v. United States, 562 U.S. 476, 493 (2011) (concluding that postsentencing conduct "bears directly" on a resentencing calculus).

We decline to exercise our discretion under the First Step Act here. It is the court's considered view that the goals of sentencing require that Forbes' 600-month sentence remain intact. As an initial matter, we note that the driving force behind Forbes' sentence was *not* the quantity of drugs trafficked by the conspiracy he led. That quantity set the Guidelines range but played little role in the ultimate sentencing calculus within that range. Rather, as our observations throughout this case reflect, we found the sentence to be necessary to account for this defendant's violent nature, his incorrigible criminality, and the danger he poses to the public.

During Forbes' initial, pre-Booker sentencing, we concluded that the 600-month aggregate term imposed was necessary due to not only the "seriousness of

---

[3] The Section 3553(a) factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational and vocational training, medical care, or other correctional treatment in the most effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing range recommended by the United States Sentencing Guidelines; (5) pertinent policy statements issued by the United States Sentencing Commission; (6) "the need to avoid unwarranted sentencing disparities" among similarly situated defendants; and (7) the need for restitution. 18 U.S.C. § 3553(a).

the offenses at issue" but also "the defendant's other violent acts and his prior criminal history, including manslaughter." (10/29/04 Sentencing Tr. 26:13-23). During the Booker resentencing, we reinforced these findings at some length, concluding that the 600-month sentence remained appropriate in view of the 18 U.S.C. § 3553(a) factors and observing:

> In the instant matter [Forbes] was the ringleader of a large scale crack and heroin distribution organization. He ruthlessly exercised control over this organization using force and intimidation to keep his minions in line. He ordered and participated in acts of brutality in furtherance of his criminal scheme, including attacks on rival drug distributors and on those who sought to leave his organization.
>
> He demonstrated no responsibility or remorse for his actions, and following his arrest continued to exercise some control over his enterprise. His criminal record reflects that for much of his life the defendant has shown utter disdain for the laws of a civilized society. Indeed, the instant offenses were begun by the defendant only months after his parole from a conviction for manslaughter.
>
> The court does not doubt for an instant that the defendant is a danger to this society and that the sentence imposed today reflects the seriousness of the instant offense, takes into account the defendant's substantial criminal record, and is absolutely necessary to promote respect for the law and to deter future criminal conduct.

(4/19/06 Resentencing Tr. 17:24-18:24). And ten years later, when Forbes moved for a sentence reduction under Amendment 782 to the Sentencing Guidelines, we said:

> Forbes has repeatedly exhibited a dearth of conscience and a blatant disregard for human life, both with respect to the offense conduct underlying his current sentence and past offenses. He expressed no remorse at the sentencing proceedings in this matter, and his misconduct while imprisoned demonstrates

9

> neither repentance nor rehabilitation. Rather, his
> conduct bespeaks an unrelenting commitment to his
> chosen criminal path. In short, the inextinguishable
> threat presented by this defendant can be restrained
> only by continued incarceration. For the sake and the
> safety of the public, the initial sentence imposed by this
> court must remain intact.

Forbes, 2016 WL 1182249, at *4.

These same concerns remain today. This is an individual who broke a young woman's nose with a Nerf baseball bat over a drug debt. Who forced a drug-addicted coconspirator to eat cat feces. Who held a knife to the throat of another drug dealer over stolen drug proceeds. Who was involved in a car chase and shootout during which several vehicles were shot. Who, together with an unknown associate, shot, stabbed, and hospitalized a rival drug dealer. And who did all of this in the weeks and months following his parole from an approximately seven-year prison term for first-degree manslaughter—a conviction landed for shooting and killing an individual with an AK-47 assault rifle while on parole from yet another prison sentence.

Appointed counsel argues that Forbes is now a different man than these facts depict. (Doc. 1325 at 19-20). But we respectfully disagree that Forbes "has gotten it together." (See id. at 1-2, 19-20). In the past four years alone, Forbes has been disciplined for being in an unauthorized area (March 2016), refusing work or program assignments and failing to follow safety regulations (July 2017), failing to follow safety regulations (September 2017), destroying property of $100 or less (November 2017), possessing contraband (March 2018), and mail abuse (April 2018).

In March 2019, he was sanctioned for fighting.[4] As we intimated in 2016, we suspect that Forbes' lack of seriously violent incidents while in prison is largely attributable to having been incarcerated in the federal government's most secure penitentiaries. See Forbes, 2016 WL 1182249, at *4 & n.2. And it does little to quell our concerns that Forbes seemingly shaped up after the First Step Act's passage. (See Doc. 1325 at 20). That Forbes sees an opportunity does not convince us that he has seen the light.

Finally, counsel identifies as a distinguishing factor that we are now hearing from Forbes directly for the first time. In a letter attached to his motion, Forbes indicates that "I've always been responsible for my actions," that "[i]t's been a rough 16 years" adjusting to life in federal prison, and that Forbes now realizes "I have to do this time and stop letting the time do me." (Doc. 1325-1). Forbes says the "world has changed drastically and so have I" and that he would "just like a fair shot at freedom." (Id.) We appreciate that Forbes is finally taking some semblance of ownership for his conduct. But his letter is more notable for what it lacks. There is no indication of remorse in Forbes' words, nor any sympathy for the many he has

---

[4] Forbes was also sanctioned for fighting in September 2018, although records provided by the probation officer indicate that Forbes "was not the aggressor, defended himself." We note that the above-summarized incidents are just the record that Forbes accumulated between our March 2016 decision and today. As detailed in the probation officer's Amendment 782 addendum, Forbes was sanctioned on 36 other occasions between 2004 and 2016 for offenses ranging from insubordination, possessing contraband, and stealing food service items to possessing intoxicants, fighting (twice), and possessing a dangerous weapon (twice). (See Doc. 1299 at 5-10).

hurt. The letter reveals only that, to Forbes, the tradeoff of a 50-year sentence for his crimes was "not worth it." (Id.)

For all of these reasons, we will deny Forbes' motion for a sentence reduction. We recognize that the 600-month term of imprisonment imposed in this case is substantial. But it is substantial for entirely valid reasons. This defendant engaged in serious criminal conduct. He has committed acts of extreme violence and cruelty, both in this case and previously, and he has yet to express remorse for that conduct. His criminal record demonstrates a pattern of recidivism, and his prison disciplinary history reflects ongoing if not continuous misconduct. We believe that Michael Forbes continues to present a danger to the public. Thus, the manifold concerns that supported his 600-month sentence in 2004, in 2006, and in 2016 support our denial of his motion today.

### III.   Conclusion

We decline to exercise our discretion under Section 404(b) of the First Step Act. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:   April 20, 2020